# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CANTZ, | : | CIVIL NO: 1:14-CV-02424 |
| Petitioner, | : | |
| | : | (Judge Kane) |
| v. | : | |
| WARDEN OF FCI-SCHUYLKILL, | : | |
| | : | (Magistrate Judge Schwab) |
| Respondent. | : | |

## REPORT AND RECOMMENDATIONS

On December 22, 2014, this action was initiated when a habeas corpus petition was filed pursuant to U.S.C. § 2241 by the *pro se* petitioner, Michael Cantz ("Cantz"), currently a federal prisoner at FCI-Schuylkill. In his petition, Cantz raises due process claims in connection with decisions of drug treatment specialists to expel him from the Residential Drug Abuse Program, resulting in his ineligibility for early release and halfway house placement. Cantz's petition is currently ripe for review. Our recommendation follows.

**I.    Relevant Background**.

On June 10, 2010, Cantz was sentenced in the United States District Court for the Eastern District of Pennsylvania to a 132-month term of imprisonment for possession with intent to distribute 500 grams or more of cocaine as well as aiding

and abetting. *Doc. 8-1* at 4, 10. Cantz is projected to be released from federal prison on July 27, 2016, *via* good conduct time credit. *Id.*

On November 28, 2012, Cantz was designated as qualified for the Residential Drug Abuse Program ("RDAP"), and he signed the "Agreement to Participate in a Bureau of Prisons Residential Drug Abuse Treatment Program" form. *Id*. at 4, 33-35. Pursuant to the Bureau of Prison's ("BOP") Program Statement 5330.11, in order for an inmate to successfully complete the RDAP, he or she must complete three separate components: (1) a unit-based component; (2) follow-up services; and (3) a transitional drug abuse treatment component. *Id*. at 4, 14. Cantz began the unit-based component of the RDAP on February 25, 2013. *Id*. at 4. On November 14, 2013, treatment staff found Cantz to be in possession of an unauthorized amount of United States postage stamps and to be participating in a fantasy football league. *Id*. Treatment staff then conducted an "intervention" in which Cantz took responsibility for his actions, stated he would refrain from any institutional gambling, and was assigned certain treatment intervention tasks. *Id*. at 4-5, 37-38. Cantz was also warned that failure to change his behavior may result in expulsion from the RDAP. *Id*. at 5, 38.

Cantz completed the unit-based component of the RDAP on December 3, 2013 and began the follow-up to the unit-based component. *Id.* at 5. On December 20, 2013, Cantz received another formal warning from treatment staff

pertaining to his involvement with gambling. *Id.* at 5, 40-41. Another intervention was held in which Cantz again took responsibility for his actions, was assigned treatment intervention tasks, and was again warned that his failure to change his behavior could result in expulsion from the RDAP. *Id.*

By March 28, 2014, Cantz was residing in "Unit 1B" at FCI-Schuylkill, a unit which houses inmates who have completed the unit-based component of the RDAP. *Id.* at 5. On this date, RDAP treatment staff conducted a random "shakedown" of Unit 1B, and during a search of Cantz's cell, an officer found a "betting slip" hidden inside a Kool-Aid box within Cantz's locker. *Id.* at 5, 43. The betting slip was for a "current game." *Id.*

On March 31, 2014, Cantz met with a drug treatment specialist as well as the RDAP's program coordinator, Dr. Erin Mennig, to discuss his involvement with gambling and overall lack of treatment progress. *Id.* at 6. Based on Cantz's conduct and the two prior warnings he received, Mennig decided to expel him from the RDAP due to his "disruptive behavior and unsatisfactory progress in the program." *Id.* Cantz's expulsion from the RDAP also caused him to be ineligible for early release pursuant to 28 U.S.C. § 3621(e) and his projected early release date was removed. *Id.* at 46. Cantz never received an official incident report from the officer who found the betting slip in his locker, but the RDAP Participant

3

Handbook and acknowledgement signed by Cantz authorized removal from the RDAP and other sanctions without "adjudicated" incident reports. *Id*. at 6, 49.

On July 29, 2014, Cantz met with Chief Psychologist Kristina Lloyd to request information about a possible re-entry into the RDAP. *Id*. at 6, 53. Lloyd informed him of the procedures to seek re-entry and explained to him that the primary purpose of RDAP was treatment rather than sentence reduction. *Id*. According to a report by Lloyd, however, Cantz only expressed an interest in the early release aspect of the RDAP and did not express an interest in actual treatment. *Id*.

Cantz's habeas petition and memorandum in support thereof (*Docs. 1 & 2*) raise procedural due process claims in connection with his expulsion from the RDAP program and his resulting ineligibility to be placed into a halfway house and removal of his original early release date. Cantz alleges that RDAP Drug Treatment Specialists ("DTS") expelled him from RDAP without "following established policy." *Doc. 2* at 3. Specifically, Cantz takes issue with the manner in which his cell was searched when the officer (Officer Pappas) found the betting slip in his locker, and he also takes issue with the fact that he was expelled from the RDAP even though Officer Pappas at no time filed an incident report pertaining to the discovery of the betting slip. *See id*. at 4.

Cantz has the following complaints about the actual search which turned up the betting slip. First, Cantz complains that Officer Pappas was not assigned to Cantz's housing unit at the time of the search and that Pappas "abandoned his post" in his assigned housing unit to conduct the search of Cantz's cell. *Id*. Second, Cantz complains that to conduct the search, Officer Pappas blocked the cell door window with a bath towel to prevent inmates, staff, and cameras from seeing inside the cell. *Id.* Finally, Cantz complains that although Pappas reported to the Drug Treatment Specialist that he found a betting slip, he neither wrote an incident report nor did he retain the betting slip as evidence. *Id*. Cantz denies ownership of the betting slip and obtained an affidavit from his cellmate Jorge Quijada, who affirmed that the gambling slip belonged to him rather than Cantz. *Id*. at 21 (*Exhibit* F). Although Cantz requested a hearing to prove his innocence, this request was allegedly denied and DTS refused to consider his evidence. *Id.* at 4. Cantz argues that he has exhausted his administrative remedies, the most recent attempt being a June 20, 2014 appeal to the BOP Director at the BOP Central Office, who allegedly has failed to answer by a deadline of October 4, 2014. *Id*. at 2-3. That Cantz has exhausted his administrative remedies does not appear to be in dispute.

Cantz concedes that the RDAP Participant Handbook and acknowledgement he signed authorized removal from the RDAP and other sanctions without

"adjudicated" incident reports. Cantz, however, argues that the use of the word "adjudicated" means that there must at least be a *pending* incident report in order for an inmate to be removed from the RDAP. In other words, Cantz argues that removal from RDAP is authorized if an incident report is pending and just has not yet been fully adjudicated, but removal is not authorized if there is no incident report pending at all.

Additionally, Cantz argues, contrary to the respondent, that he *does* have a liberty interest in the matter because he previously graduated from RDAP and actually earned a one-year sentence reduction and one-year halfway house placement. In asserting that he successfully completed the RDAP and was granted a one-year sentence reduction and halfway house placement, Cantz cites to Exhibit A-2 in his petition. A review of Exhibit A-2, however, does not provide any proof of Cantz's assertion. In fact, Exhibit A-2 actually states that Cantz was *expelled* from RDAP and that his sentence computation was being changed to reflect this expulsion. *Id.* at 10 (*Exhibit A-2*).

On May 19, 2015, this Court directed Respondent to supplement its initial response in order to address whether Cantz was actually granted a one-year sentence reduction for completion of the RDAP. *Doc. 10*. In reviewing the Respondent's supplement (*Doc. 11*), it appears Cantz was mistaken in his belief that he had completed the RDAP and had earned a sentence reduction and halfway

house placement.  When Cantz was first accepted into the RDAP, staff at the BOP's Designation and Sentence Computation Center (DSCC) entered Cantz's estimated date of completion of the RDAP, and, accordingly, Cantz was provided with notice of a *conditional* release date.  *Doc. 11* at 3, 49.  Cantz, however, was informed that the release date was merely conditional and it could change or eligibility for early release could be lost altogether if Cantz chose to withdraw or was expelled from RDAP.  *Id.* at 3-4, 49.  Thus, Cantz was provided with a potential date for early release, but it was not set in stone or guaranteed, and he did not in fact complete the RDAP program.  Cantz completed the first unit-based services component of RDAP but was still in the process of completing the second follow-up services component at the time he was expelled from the program due to disruptive behavior and unsatisfactory progress. *Id*. at 6.

We now turn to Cantz's habeas petition, which requests that this Court restore his early release and halfway house placement, as well as immediately release him from confinement.

## II. **Discussion**.

Cantz's habeas petition alleges violations of his due process rights.  The Fifth Amendment's Due Process Clause provides that "no person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. CONST.

amend. V. A due process claim requires a two-part analysis. First, the court must determine whether the interest asserted by the petitioner is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.* Here, the interest asserted by Cantz is that of his early release from prison as well as his placement into a halfway house, each of which may have been afforded to him if he had successfully completed the RDAP. Cantz argues that he was deprived of these interests without due process of law, since Officer Pappas never filed an incident report after discovering the betting slip, and Cantz was never given a chance to present evidence and plead that he was not actually the one in possession of the betting slip.

We conclude that Cantz's due process claims are without merit because this Court has previously held that an individual "ha[s] no liberty interest in a sentence reduction under § 3621," provided that "there [is] no ambiguity that his early release eligibility [is] provisional and conditioned upon . . . his successful completion of RDAP." *Hugel v. Bledsoe*, 2009 WL 1406252, at *4 (M.D. Pa. May 18, 2009) (citing *Richardson v. Joslin*, 501 F.3d 415 (5th Cir. 2007)). The facts of the *Hugel* case, decided by the Honorable Christopher C. Conner of this Court, were strikingly similar to those in the case at bar. Habeas petitioner Hugel had

been accepted into the RDAP program at USP Lewisburg and was later expelled from the program after an incident in which his wife allegedly introduced methamphetamines through the visiting room via two soda bottles given to Hugel. *Id*. at 1-2. A urine analysis was conducted immediately following the alleged incident, and although the official test results were "inconclusive" and Hugel received no formal incident report, RDAP staff decided to expel Hugel from the RDAP as "his actions were clearly not representative of a participant's sincere attempts to change their criminal thinking and substance abuse patterns." *Id*. at 2. Although Judge Conner's decision to dismiss Hugel's habeas petition was partially based on the fact that he failed to exhaust his administrative remedies, it was also noted that Hugel's habeas petition case would fail on the merits as well. Judge Conner found that Hugel was well aware that he would only be eligible for early release if several conditions were met, including his successful completion of RDAP, and he, therefore, had no liberty interest in a sentence reduction and also failed to "demonstrate[] that he [was] in custody in violation of the Constitution or laws of the United States." *Id*. at 4.

The fact pattern surrounding Cantz's expulsion from RDAP is similar in multiple ways to that surrounding Hugel's RDAP expulsion. Cantz, like Hugel, was expelled from RDAP based on an alleged incident of misconduct, even though no formal incident report was filed. Additionally, it was found that Cantz's

attitude and actions, like those of Hugel, were not representative of an individual with a sincere desire to engage in a meaningful and successful drug rehabilitation process. Finally, like Hugel, Cantz was put on clear notice when he first entered the RDAP that any potential early release given to him was merely provisional and was conditional upon his successful completion of the program. *See Doc. 11* at 3-4, 49. Thus, in this case, we see no reason to apply any reasoning different than that applied in *Hugel*. We, therefore, conclude that Cantz had no liberty interest in an early release and that his habeas petition alleging due process violations is without merit.

### III. Recommendation.

Based on the foregoing reasons, **WE RECOMMEND** that Cantz's petition for the writ of habeas corpus (*Doc. 1*), pursuant to 28 U.S.C. § 2241, be **DENIED**

> The Parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **17th** day of **August, 2015**.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge